UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

James L. Morgan,
    Plaintiff

    v.                                        Civil No. 03-cv-179-SM
                                          Opinion No. 2005 DNH 101
Irene McCormack,
    Defendant

**O R D E R**

Pro se plaintiff, James Morgan, is an inmate at the New Hampshire State Prison ("NHSP"). He brings this action against Irene McCormack, seeking damages for what he claims was a violation of his constitutionally protected right to privacy. See generally 42 U.S.C. § 1983. Specifically, plaintiff says McCormack violated his constitutionally protected privacy rights by releasing (or assisting another in releasing) certain confidential information about plaintiff to the Grafton County Attorney and the New Hampshire Parole Board. Pending before the court are the parties' cross-motions for summary judgment.

**Standard of Review**

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

**Background**

Previously, plaintiff brought virtually identical claims against Lance Messenger, the former director of the New Hampshire Department of Corrections Sexual Offender Program - a treatment program for inmates, like plaintiff, convicted of sexual crimes. Morgan v. Messenger, 2003 DNH 145, 2003 WL 22023108 (D.N.H.

August 8, 2003).  That case was dismissed, without prejudice, for failure to exhaust available prison administrative remedies.[1]

The facts underlying plaintiff's claims are fully discussed in the court's opinion in Morgan v. Messenger, but the pertinent details are as follows.  In 1996, plaintiff was convicted in state court of aggravated felonious sexual assault and sentenced to three and one-half years to life in prison, with all but seven years of the maximum suspended - essentially a three and one-half to seven year sentence, provided he did not re-offend upon his release.  Under the terms of that sentence, the State could seek to have the suspended portion reimposed at any time within the next 20 years, should plaintiff re-offend.

In January of 2000, plaintiff was released on parole.  But, in light of his criminal sexual history (which includes a

---

[1] Here, in support of her motion for summary judgment, defendant asserts that plaintiff has yet to exhaust available administrative remedies and, for that reason, says plaintiff's claims should be dismissed.  See 42 U.S.C. § 1997e.  See also Booth v. Churner, 532 U.S. 731, 734 (2001).  But, the records regarding plaintiff's effort to exhaust his administrative claims are, at best, confusing and defendant has failed to demonstrate that she is entitled to judgment as a matter of law on exhaustion grounds.

conviction in Vermont on five counts of molesting young boys, as well as the offense underlying this case) New Hampshire authorities provided, among other things, that plaintiff could not have unsupervised contact with minor children.

Fewer than six months after his release on parole, plaintiff was arrested and returned to prison for having violated various conditions of that parole, including the stipulation that he not have any unsupervised contact with minor children.  But, absent further intervention by the State (i.e., moving the court to bring forward the suspended portion of his sentence), plaintiff would have served the imposed period of incarceration in 2002.  At that point, he would have been released into the community, without any parole supervision.

Lance Messenger (the defendant in plaintiff's earlier suit), was the director of the New Hampshire Department of Corrections Sexual Offender Program, and Irene McCormack, was serving as the program coordinator.  In her capacity as program coordinator, McCormack worked as plaintiff's primary therapist and, naturally, had access to information in plaintiff's program records.

Upon learning that plaintiff had been reincarcerated for violating the conditions of his parole by, among other things, having unsupervised contact with a three-year-old boy and a seven-year-old girl, Messenger wrote to both the New Hampshire Parole Board and the Grafton County Attorney.  Based upon his personal knowledge of plaintiff, as well as information contained in plaintiff's treatment records, Messenger warned that plaintiff was a "fixated pedophile and poses a very high risk to reoffend." Exhibit K to Defendant's Memorandum.  Accordingly, Messenger recommended that the State seek to bring forward the suspended portion of plaintiff's sentence, so that upon his eventual release from incarceration, the State might impose parole conditions and continue to monitor his behavior.

The Grafton County Attorney responded by bringing an action in state court, seeking to have the suspended portion of plaintiff's sentence imposed.  Following a hearing on the matter, at which plaintiff was represented by counsel, the court amended plaintiff's sentencing order as follows:

> That portion of the sentence which states "All but 7 year(s) of the maximum sentence is suspended" shall be modified to reflect that "All but 20 year(s) of the

>      maximum sentence is suspended." All other terms of the
>      February 9, 1996 sentence and February 22, 1996
>      amendment shall remain in full force and effect.

Notice of Amendment to Sentence, Exhibit M to defendant's memorandum. Plaintiff is currently incarcerated and serving that sentence.

According to her affidavit, McCormack did not have any input into Messenger's decision to send warning letters to the parole board and the county attorney. Nor, says McCormack, did she participate in drafting those letters or supply Messenger with any information referenced in those letters. And, although she was present at plaintiff's resentencing hearing, McCormack says she did not participate in the hearing in any way (she says she attended the hearing primarily because Messenger planned to leave the Department of Corrections, and it was assumed - correctly - that she would replace him as the Director of the Sexual Offender Program, and she wished to familiarize herself with courtroom practices and procedures).

**Discussion**

The sole claim in plaintiff's complaint is that McCormack violated his constitutionally protected right of privacy when Program Director Messenger contacted the parole board and county attorney, and disclosed private information from his treatment files.  Although his theory of liability is not entirely clear, it appears that plaintiff erroneously believes that McCormack participated in Messenger's decision to write the letters in question and/or assisted him in drafting those letters.  Plaintiff also seems to suggest that, despite the fact that he was represented by counsel at the resentencing hearing, McCormack had some obligation to object when confidential information from plaintiff's treatment file was provided to the court.

With regard to plaintiff's first claim - that McCormack somehow participated in the drafting of the two letters at issue - McCormack has submitted a detailed affidavit, in which she unequivocally denies any involvement in either the decision to write those letters or the actual drafting of the letters.  In response, plaintiff has pointed to no evidence even remotely supportive of the view that McCormack was involved in Messenger's

decision to send the letters.  Plaintiff candidly admits as much, saying that if "the former director of the sexual offender program [i.e., Messenger] released the information in question without defendant's knowledge, (as the argument contained in [her] motion clearly suggests) then this matter can be disposed of quite easily."  Plaintiff's Response at 3-4.  He is correct.

As to plaintiff's second claim - that McCormack breached a constitutional duty owed to him by failing to object to the introduction of confidential materials at his resentencing - plaintiff has failed to point to any legal support for the proposition that McCormack owed him such a duty.  Nor has he provided any legal support for the proposition that, by failing to object, McCormack somehow violated plaintiff's constitutionally protected right of privacy (among other things, it is unclear whether McCormack would even have standing to interpose such an objection at the resentencing hearing).[2]

---

[2] Parenthetically, the court notes that even if plaintiff did have legal and factual support for his claims, a strong argument could be made that plaintiff authorized the release of confidential information from his treatment file by signing the "Sexual Offender Treatment Program Acknowledgment of Confidentiality Waiver."  Exhibit I to Defendant's Memorandum.  In that waiver, plaintiff expressly agreed that his "rights of confidentiality regarding [his] treatment in the Sexual Offender

**Conclusion**

For the foregoing reasons, as well as those set forth in defendant's memorandum, defendant's motion for summary judgment (document no. 40) is granted. Plaintiff's motion for summary judgment (document no. 37) is denied. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

```
                            _____
                            Steven J. McAuliffe
                            United States District Judge
```

June 29, 2005

cc:  James L. Morgan
     Mary E. Maloney, Esq.

---

Program do not apply to actual, suspected or potential incidents of . . . violent behavior." Id. at para. 1 (emphasis supplied). Few would deny that potential acts of sexual assault against minor children would fall squarely within the realm of "violent behavior."

9